# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY WILSON, #K-61439,<br><br>  Plaintiff,<br><br>vs.<br><br>VENERIO SANTOS,<br>VIPIN SHAH,<br>WEXFORD HEALTH SOURCES INC,<br>TAMMY L. TYLER,<br>NURSE BEVERLY,<br>NURSE SHOEMAKER,<br>NURSE HARRELL,<br>LANA NALEWAJKA, and<br>JANE DOE,<br><br>  Defendants. | Case No. 18-CV-1483-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Larry Wilson, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Centralia Correctional Center ("Centralia"), brings this *pro se* action pursuant to 42 U.S.C. § 1983. According to the Complaint, Plaintiff began having trouble with his bowel movements and experiencing severe abdominal pain in January 2018. In April 2018, an ultrasound revealed that Plaintiff's intestines were attached to the mesh from a previous hernia surgery, necessitating surgical repair. Plaintiff claims that before and after the surgery, Centralia officials exhibited deliberate indifference to his serious medical condition, in violation of the Eighth Amendment. He seeks a declaratory judgment, monetary damages, and injunctive relief.

This case is now before the Court for a preliminary review of the Complaint (Doc. 1)

1

pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court must dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from suit.

## The Complaint

Plaintiff makes the following allegations in the Complaint: In January 2018, Plaintiff began having trouble with bowel movements and experiencing severe pain in his lower abdomen (where he previously had surgery to repair a hernia). (Doc. 1, p. 4). It felt as if his "intestines were ripping inside of his stomach." *Id.* Between January 2018 and April 2018, Plaintiff sought treatment from Nurse Jane Doe, Dr. Santos, and Dr. Shah. (Doc. 1, pp. 4-7). These individuals refused to treat Plaintiff's pain, failed to order necessary testing, persisted in a course of treatment known to be ineffective, and/or delayed medical care. *Id.* During this time, Plaintiff filed an emergency grievance that was expedited by Centralia's warden. (Doc. 1, pp. 6, 32-33) (emergency grievance dated February 16, 2018). The emergency grievance was denied after Nalewajka, the Health Care Administrator, spoke with Plaintiff's treating physicians and concluded that Plaintiff was receiving appropriate care. (Doc. 1, pp. 6, 34).

In April 2018, an ultrasound revealed that Plaintiff's intestines were attached to the mesh from his previous hernia surgery. (Doc. 1, p. 7). Dr. Santos told Plaintiff surgical repair was necessary and scheduled him for surgery at St. Mary's Hospital. (Doc. 1, pp. 7-8). While Plaintiff waited for surgery, Dr. Santos prescribed 600 mg of Ibuprofen to treat his pain. *Id.*

On May 9, 2018, Plaintiff sought treatment from Nurse Harrell, a Licensed Practical Nurse, for his ongoing pain. (Doc. 1, pp. 7, 45). Plaintiff told Harrell the Ibuprofen was not working. *Id.* Harrell told Plaintiff she was only allowed to issue him an additional 200 mg of Ibuprofen; she did not refer Plaintiff for treatment with a physician. (Doc. 1, pp. 7-8, 45).

Plaintiff's surgery was performed on June 4, 2018. (Doc. 1, pp. 8, 50-51). After surgery, Plaintiff was returned to Centralia with follow-up care instructions, including prescriptions to manage his post-operative pain. *Id.* Plaintiff claims that Nurse Beverly, Nurse Shoemaker, and Dr. Santos failed to comply with his surgeon's post-operative instructions. (Doc. 1, pp. 8-10, 61-62). Plaintiff was told that Centralia medical officials do not comply with prescriptions from off-site physicians and that Dr. Santos was showing him "tough love" by refusing to give him the pain medication prescribed by his surgeon (Dr. Santos told Plaintiff he would become an addict if he took the pain medication prescribed by the surgeon). *Id.* Instead, Plaintiff received 600 mg. of Ibuprofen. *Id.*

On June 12, 2018, Plaintiff filed another emergency grievance, seeking "adequate medical treatment" for his post-operative complications and complaining that he was not receiving the pain medication prescribed by his surgeon. (Doc. 1, pp. 9, 61-62). Administrator Nalewajka acknowledged that Plaintiff's surgeon's instructions were not being followed, but did nothing to assist him. (Doc. 1, p. 9). Administrator Nalewajka provided an inaccurate account of the treatment Plaintiff was receiving, resulting in a wrongful denial of the emergency grievance. (Doc. 1, pp. 9-10).

Dr. Santos returned Plaintiff to his cell before removing his staples. (Doc. 1, pp. 9-10). Dr. Santos told Plaintiff his staples would be removed in 10 days, and until then, he should avoid lifting heavy weights. (Doc. 1, pp. 9-10). Nevertheless, Dr. Santos refused to provide Plaintiff with a bottom bunk permit. (Doc. 1, p. 10). Without a bottom bunk permit, Plaintiff "was forced to lift and pull himself up and down, causing him extreme pain." *Id.*

On June 21, 2018, 16 days after surgery, Nurse Tyler attempted to remove Plaintiff's staples. (Doc. 1, p. 10). Tyler did not know how to remove surgical staples, and the medical

tools she attempted to use were not working properly. (Doc. 1, pp. 10-11). As a result, her attempts to remove Plaintiff's staples were extremely painful and caused bleeding. (Doc. 1, p. 10). After approximately seven minutes, Nurse Tyler was only able to remove a single staple. *Id.* Plaintiff asked Nurse Tyler for a cutting instrument, and she gave him a pair of toe nail clippers. (Doc. 1, p. 11). Plaintiff then proceeded to cut and remove the staples himself, using the toe nail clippers. *Id.* Eventually Nurse Shoemaker saw what was happening and assisted Plaintiff in removing the staples. *Id.* Once the staples were removed, Nurses Tyler and Shoemaker sent Plaintiff back to his housing unit without cleaning or bandaging the wound. *Id.* The wound was subsequently bandaged at the request of a correctional officer who observed that Plaintiff was bleeding through his shirt. *Id.*

Pursuant to policies implemented and/or maintained by Wexford and Nalewajka, sick calls are staffed by nurses who are unqualified to diagnose medical conditions and who are only allowed to treat pain with over-the-counter medication. (Doc. 1, pp. 7, 15-17, 19). Because of this policy, Plaintiff received constitutionally inadequate care when he attended sick calls on January 18, 2018 (sick call with Nurse Jane Doe) (Doc. 1, pp. 4, 7, 15-17, 19) and May 9, 2018 (sick call with Nurse Harrell) (Doc. 1, pp. 7, 15-17, 19).[1]

## **Merits Review Under § 1915(A)**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these Counts does not constitute an opinion regarding their merit.

**Count 1 –** On January 18, 2018, during a sick call, Nurse Jane Doe exhibited deliberate indifference to Plaintiff's complaints about excruciating pain, in

---

[1] Plaintiff also references Wexford's use of an "off-site referral tool" (Doc. 1, p. 16). However, it is unclear how this alleged policy relates to any of Plaintiff's claims.

4

violation of the Eighth Amendment.

**Count 2 –** Between January 2018 and June 4, 2018 (when surgery was performed), Dr. Santos and Dr. Shah exhibited deliberate indifference to Plaintiff's serious medical condition.

**Count 3 –** Administrator Nalewajka investigated Plaintiff's February 16, 2018 emergency grievance and reported that Plaintiff was receiving appropriate care, resulting in the grievance being denied and violating Plaintiff's Eighth Amendment rights.

**Count 4 –** On May 9, 2018, during a sick call, Nurse Harrell exhibited deliberate indifference to Plaintiff's complaints about excruciating pain, in violation of the Eighth Amendment.

**Count 5 –** After Plaintiff's surgery on June 4, 2018, Nurse Beverly, Nurse Shoemaker, and Dr. Santos exhibited deliberate indifference to Plaintiff's serious medical condition, in violation of the Eighth Amendment.

**Count 6 –** Administrator Nalewajka exhibited deliberate indifference to Plaintiff's serious medical condition when he failed to act to remedy allegedly unconstitutional medical care in connection with Plaintiff's June 12, 2018 emergency grievance.

**Count 7 –** On June 21, 2018, Nurse Tyler and Nurse Shoemaker violated Plaintiff's Eighth Amendment rights in connection with removing his surgical staples.

**Count 8 –** Plaintiff received constitutionally inadequate care on January 18, 2018 and May 9, 2018, during sick calls, because of policies implemented and/or maintained by Wexford and Administrator Nalewajka.

## Count 1

Plaintiff has stated a colorable deliberate indifference claim against Nurse Jane Doe based on her alleged failure to treat his complaints of severe pain. (Doc. 1, p. 4). Accordingly, Count 1 shall receive further review as to Nurse Jane Doe. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997); *Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996).

## Count 2

Plaintiff has stated a colorable deliberate indifference claim against Dr. Shah and Dr. Santos based on their alleged failure to treat Plaintiff's pain, persistence in a course of treatment known to be ineffective, and/or delaying treatment. (Doc. 1, pp. 4-8). Accordingly, Count 2 shall receive further review as to Dr. Shah and Dr. Santos. *See Farmer*, 511 U.S. at 834; *Gutierrez,* 111 F.3d at 1373; *Cooper,* 97 F.3d at 916-17; *Walker v. Peters*, 233 F.3d 494, 498 (7th Cir. 2000).

**Count 3**

With respect to Count 3, Plaintiff has not stated a viable deliberate indifference claim against Administrator Nalewajka. According to the Complaint and attached exhibits (Doc. 1, pp. 6, 34), Nalewajka investigated Plaintiff's complaints by speaking to his physicians, who reported that Plaintiff was receiving appropriate care. *Id.* Generally, the denial of a grievance – standing alone – is not enough to violate the United States Constitution. *See, e.g., Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."). Additionally, Nalewajka, as a non-medical defendant, was "entitled to reasonably rely on the expertise of the medical professionals." *Thornton v. Godinez*, No. 17-1473, 2017 WL 6492651, at *2 (7th Cir. Dec.19, 2017) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006)). *See also Figgs v. Dawson,* 829 F.3d 895, 903-04 (7th Cir. 2016) (no deliberate indifference where prison administrative staff reasonably deferred to expertise of specialized staff); *Johnson v. Doughty,* 433 F.3d 1001, 1011 (7th Cir. 2006) (same); *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005) (same).

With respect to Count 3, Plaintiff alleges only that Nalewajka deferred to the expertise of specialized staff. There is no indication that he "turned a blind eye" to allegedly unconstitutional

conduct. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Accordingly, Count 3 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 4**

Plaintiff has stated a colorable deliberate indifference claim against Nurse Harrell based on her alleged failure to treat his complaints of severe pain and to refer him to a physician for further treatment. (Doc. 1, pp. 7-8, 45). Accordingly, Count 4 shall receive further review as to Nurse Harrell. *See Farmer*, 511 U.S. at 834; *Gutierrez*, 111 F.3d at 1373; *Cooper*, 97 F.3d at 916-17.

**Count 5**

Plaintiff has stated a colorable Eighth Amendment claim against Nurse Beverly and Nurse Shoemaker based on their alleged failure to treat Plaintiff's pain and/or to follow his surgeon's post-operative instructions. (Doc. 1, pp. 8-10, 61-62). Plaintiff has also stated a viable Eighth Amendment claim against Dr. Santos based on this alleged failure to treat Plaintiff's pain, follow his surgeon's post-operative instructions, prescribe a bottom-bunk permit, and/or remove his staples in a timely manner. *Id.* Accordingly, Count 5 shall receive further review as to Nurse Beverly, Nurse Shoemaker, and Dr. Santos. *See Farmer*, 511 U.S. at 834; *Zaya v. Sood,* 836 F.3d 800, 806 (7th Cir. 2016); *Petties v. Carter*, 836 F.3d 722, 729-730 (7th Cir. 2013).

**Count 6**

Plaintiff has stated a colorable deliberate indifference claim against Administrator Nalewajka. The allegations in Count 6 are distinguishable from the allegations at issue in Count 3. Here, Plaintiff claims Administrator Nalewajka knew that Plaintiff was receiving inadequate medical care, but did nothing to correct the alleged constitutional violation and/or made

misrepresentations regarding the care that Plaintiff was receiving. (Doc. 1, pp. 9-10). These allegations are sufficient to suggest deliberate indifference on the part of this administrative official. *See Perez v. Fenoglio*, 792 F.3d at 781 (7th Cir. 2015); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996). Accordingly, Count 6 shall receive further review.

### Count 7

Plaintiff has stated a colorable Eighth Amendment claim against Nurse Tyler based on her alleged attempt to remove his surgical staples with improper medical tools and allowing Plaintiff to remove the staples using toe nail clippers, as well as her alleged failure to clean or bandage his related wounds. (Doc. 1, pp. 10-11). Plaintiff has also stated a viable Eighth Amendment claim against Nurse Shoemaker based on her alleged failure to clean or bandage his wounds after the surgical staples were removed. *Id.* Accordingly, Count 7 shall receive further review as to Nurse Tyler and Nurse Shoemaker. *See Farmer*, 511 U.S. at 834

### Count 8

Plaintiff claims that Wexford and Administrator Nalewajka have implemented and/or maintained a policy or practice of staffing sick calls with nurses who are (1) not qualified to make independent medical assessments and (2) only authorized to prescribe over-the-counter medication. (Doc. 1, pp. 4, 7, 15-17, 19). Plaintiff also alleges that he was harmed by this policy in that his treatment was denied or delayed. *Id.* These allegations are sufficient to allow Count 8 to proceed as to both defendants. *See Heard v. Tilden*, 809 F.3d 974 (7th Cir. 2016); *Woodward v. Correctional Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Accordingly, Count 8 shall receive further review as to Wexford and Administrator Nalewajka.

### Identification of Unknown Defendants

Jon Fatheree, the Acting Warden of Centralia, will be added to the docket (official

capacity only) for responding to discovery (informal or formal) aimed at identifying the unknown defendant. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of the unknown defendant is discovered, Plaintiff must file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

## Injunctive Relief

In addition to monetary damages and declaratory relief, Plaintiff seeks to "preliminarily and permanently enjoin Wexford and the State Defendants…from subjecting Plaintiff to illegal and unconstitutional conditions, acts, omissions, policies, and practices [as] set forth above." (Doc. 1, p. 20). The Court views this as a request for injunctive relief at the close of the case. If Plaintiff requires medical care during the pendency of this action or wishes to seek some other type of interim relief, he should file a motion for a TRO or a preliminary injunction pursuant to Rule 65(a) or (b) indicating the exact form of relief he seeks, the reasons why he seeks said relief, and the factual allegations supporting his request. He may do so at any time during the pending action.

## Disposition

The Clerk of the Court is **DIRECTED** to add Jon Fatheree, the Acting Warden of Centralia, to the docket (official capacity only) for purposes of responding to discovery aimed at identifying the unknown defendant and to carry out any injunctive relief that might be ordered.

**IT IS HEREBY ORDERED** that **COUNT 1** will proceed as to **JANE DOE.**

**IT IS FURTHER ORDERED** that **COUNT 2** will proceed as to **SHAH** and **SANTOS.**

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED** without prejudice for

failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 4** will proceed as to **HARRELL.**

**IT IS FURTHER ORDERED** that **COUNT 5** will proceed as to **BEVERLY, SHOEMAKER,** and **SANTOS.**

**IT IS FURTHER ORDERED** that **COUNT 6** will proceed as to **NALEWAJKA.**

**IT IS FURTHER ORDERED** that **COUNT 7** will proceed as to **TYLER AND SHOEMAKER.**

**IT IS FURTHER ORDERED** that **COUNT 8** will proceed as to **WEXFORD band NALEWAJKA.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **SANTOS, SHAH, WEXFORD, TYLER, BEVERLY, SHOEMAKER, HARRELL, NALEWAJKA,** and **FATHEREE** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown defendant until Plaintiff has identified her by name in a properly filed Motion for Substitution of Parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service addresses for this individual.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 1, 2018**

s/ STACI M. YANDLE
**U.S. District Judge**